UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROGERS SMITH, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-3565 |
| | § § | |
| ROBIN AMERICA, INC; dba SUBARU-ROBIN, *et al*, | § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

Pending before the Court is Cross-Plaintiff Home Depot U.S.A., Inc.'s ("Home Depot") Motion for Summary Judgment Against Cross-Defendants Robin America, Inc. d/b/a Subaru-Robin ("Subaru-Robin") and Fuji Heavy Industries U.S.A., Inc. ("Fuji USA"). (Doc. 127.) Also pending before the Court is Defendants Fuji Heavy Industries, Ltd. ("Fuji Limited"), Fuji USA, and Subaru-Robin's Motion for Summary Judgment Against Plaintiffs and Intervenor. (Doc. 128.) Also before the Court is the Parties' Joint Stipulation of Dismissal of All Claims against Home Depot. (Doc. 41.) Finally, before the Court is Defendants Fuji Limited, Fuji USA and Subaru-Robin's Motion in Limine. (Doc. 174.) Upon review and consideration of these motions, the responses, replies, and surreplies thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Cross-Plaintiff Home Depot's motion for summary judgment should be denied and Defendants Fuji Limited, Fuji USA, and Subaru-Robin's motion for summary judgment should be granted.

I.  Background and Relevant Facts

This is a product liability case arising from the deaths of Rogers Smith III, Rekesha Hopkins, and Kaven Randle in Houston, Texas, due to carbon monoxide poisoning emitted by a

portable generator.  In the aftermath of Hurricane Ike, sometime between September 13th and September 18th of 2008, the deceased operated a Black Max 6560 portable generator inside a closed garage attached to their home at 4973 East Ridgecreek Drive in Houston, Texas.  (Doc. 1-1 ¶ 20.)

On October 30, 2008, Plaintiffs filed suit in 190th Judicial District Court of Harris County, Texas.  (Doc. 1-1 at 4.)  Plaintiffs, survivors of the deceased, bring claims for negligence, negligent misrepresentation, product defects, wrongful death under the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code § 71.002, and survivorship damages under the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021.  (Doc. 131.)  On December 4, 2008, Home Depot removed the case to this Court.  (Doc. 1.)  On August 26, 2009, Plaintiffs voluntarily dismissed their claims against Home Depot.  (Doc. 41.)  On October 19, 2009, Home Depot filed its cross claims against Subaru-Robin and Fuji USA for indemnification under Section 82.002 of the Texas Civil Practice & Remedies Code.  (Docs. 63 and 64.)  On February 19, 2010, Intervenor Phil Jackson ("Jackson"), Rekesha Hopkins' father, filed his complaint, bringing essentially the same claims as the Plaintiffs.  (Doc. 107.)

On March 9, 2010, the Plaintiffs settled their claims with Defendants Powermate Corp. ("Powermate") and The Coleman Company, Inc. ("Coleman").  (Docs. 103, 106.)  On May 26, 2010, the Intervenor settled with Powermate and Coleman.  (Docs. 124, 132.)  On June 15, 2010, Plaintiffs filed their amended and operative complaint.  (Doc. 131.)  On June 29, 2010, Intervenor Jackson filed his amended and operative complaint.  (Doc. 142.)  Home Depot as cross-plaintiff now moves for summary judgment on its cross claims against Subaru-Robin and Fuji USA.  (Doc. 127.)  Defendants Fuji Limited, Fuji USA, and Subaru-Robin move for summary judgment against Plaintiffs and the Intervenor.  (Doc. 128.)

II. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable*

*Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III. Discussion

Plaintiffs initially alleged that the generator involved in this case was bought from Home Depot. (Doc. 1-1 at ¶ 21.) On November 6, 2008, Home Depot notified Subaru-Robin and Fuji USA of their duty to defend and indemnify Home Depot with respect to the claims asserted by Plaintiffs. (Doc. 127-5.) Home Depot alleges that Subaru-Robin and Fuji USA failed to defend and indemnify it as required by law. (Doc. 127 at 3.) As a result,. Home Depot filed cross claims against Subaru-Robin and Fuji USA, asserting claims for indemnity pursuant to Texas Civil Practice and Remedies Code § 82.002 (the "Product Liability Act"). (*Id.* at 4.)

The Texas Products Liability Act requires that:

> (a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.
> (b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

Tex. Civ. Prac. & Rem. Code § 82.002(a)–(b). A "manufacturer" is defined as:

> a person who is a designer, formulator, constructor, rebuilder, fabricator,

> producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

Tex. Civ. Prac. & Rem. Code § 82.001(4).

The manufacturer's duty to indemnify the seller "applies without regard to the manner in which the action is concluded." *Id.* § 82.002(e)(1). "[U]nder [§ 82.001](e)(1), it is the manufacturer's 'duty to indemnify' that applies regardless of outcome, and plaintiff's pleadings are accordingly sufficient to invoke that duty." *Meritor Auto, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001); *General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255–56 (Tex. 2006) (Holding that the "duty to indemnify does not depend on an adjudication of the indemnitor's liability, as it does under the common law. This follows from section 82.002(e)(1) . . . . The duty to indemnify is triggered by the injured claimant's pleadings."). The only exception to indemnity under § 82.002 is where the loss was caused by the seller's acts. Tex. Civ. Prac. & Rem. Code § 82.002(a).

Thus, in order to recover on its indemnity claim pursuant to the Texas Product Liability Act, Home Depot must establish that (1) Plaintiffs asserted product liability claims against Home Depot; (2) Home Depot sustained losses resulting from those claims; and (3) Home Depot incurred attorneys' fees and costs in connection with its efforts to enforce its right to indemnification by the allegedly faulty generator's manufacturer(s). In this case, Home Depot did not sell the model generator at issue in Plaintiffs' claims. (Doc. 127-6, Exhibit F, Decl. of Mead Bradley.) Plaintiffs voluntarily dismissed their claims against Home Depot on August 26, 2009. (Doc. 41.)

Home Depot argues that the mere fact that Plaintiffs alleged it sold the generator, an allegation later discovered to be unfounded, was sufficient to trigger the generator's

manufacturer's duty to indemnify it as the purported seller. (Doc. 127 at 6.) Subaru-Robin and Fuji USA deny that they manufactured the generator at issue and point to evidence showing that the Black Max 6560 generator was manufactured by Powermate. (Doc.144 ¶ 8; Doc. 144-3 at 3, Deposition of Plaintiffs and Intervenor's expert, Edward W. Karnes, Ph.D.; Doc. 144-1 ¶ 3, Aff. of Brad Murphy; Doc. 144-2 ¶¶ 3–4, Aff. of Tom Graber.) The evidence shows that the "Black Max 6560 generator was manufactured by Powermate" with Fuji Limited's combustion engines that were supplied by Subaru-Robin. (Doc. 144-1 ¶ 4; Doc. 144-2 ¶¶ 3–4.) Fuji USA "did not manufacture the [Fuji Limited] engine, and [Fuji USA] did not distribute the [Fuji Limited] engine. [Fuji USA] did not have anything to do with the warning labels placed on the [Fuji Limited] engine, the generator, or the accompanying instruction manuals at issue in this lawsuit. [Fuji USA] had no involvement with any aspect of the engine in this lawsuit." (*Id.* ¶ 5.)

Home Depot is correct that a manufacturer has a duty to indemnify a party wrongly accused of having sold an allegedly defective product. *Meritor*, 44 S.W.3d at 89; *General Motors*, 199 S.W.3d at 256; *Freeman Financial Investment Co. v. Toyota Motor Corp.*, 109 S.W.3d 29, 34 (Tex. App—Dallas 2003, pet. denied); *Fitzgerald v. Advanced Spine Fixation Systems*, 996 S.W.2d 864, 865 (Tex. 1999); Tex. Civ. Prac. & Rem. Code § 82.002(e)(1).

The question here, seemingly one of first impression, is whether this reasoning extends so far as to require a party wrongly accused of having manufactured an allegedly defective product to indemnify a party wrongly accused of having sold it. The Court declines to extend the law to reach this conclusion. *See Owens & Minor, Inc. v. Ansell Healthcare Products, Inc.* 251 S.W.3d 481, 485 (Tex. 2008) (holding that the scope of the indemnity obligation a manufacturer owes a seller under Tex. Civ. Prac. & Rem. Code § 82.002 does not extend "to claims related to the sale of other manufacturer's products."). Because neither Subaru-Robin nor Fuji USA qualify as a

"manufacturer" under Tex. Civ. Prac. & Rem. Code § 82.001(4), Home Depot's motion for summary judgment must be denied and its cross claims against Subaru-Robin and Fuji USA must be dismissed.

Defendants Fuji Limited, Fuji USA, and Subaru-Robin move for summary judgment against Plaintiffs and the Intervenor. (Doc. 128.) Plaintiffs and Intervenor allege generally that the generator in this case, a Black Max 6560, was manufactured by Defendants Fuji Limited, Fuji USA, and Subaru-Robin. (Doc. 131 ¶ 21.) Powermate was an original defendant in this action, but was dismissed after settling with the Plaintiffs. (See Doc. 125 ¶ 5.) The evidence in this case shows that the Black Max 6560 was manufactured by Powermate using a combustion engine made by Fuji Limited and supplied by Subaru-Robin. (Doc. 128-7 at 4, Exhibit G, Deposition of Plaintiffs and Intervenor's expert, Edward W. Karnes, Ph.D.; Doc. 128-9 ¶ 4, Aff. of Brad Murphy.) "Powermate obtained [Fuji Limited] engines from [Subaru-Robin]" and then "integrated the component engines, along with all other component parts from other component manufacturers, into the generator to assemble a final product for sale to the public." (Doc. 128-11 ¶ 3, Aff. of Tom Graber.)

In product liability claims, the plaintiff must establish that (1) the defendant placed a product in the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between that condition and the plaintiff's injuries or damages. *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The law, however, "does not guarantee that a product will be risk free, since most products have some risk associated with their use." *Id.* at 479 (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381 (Tex. 1995)). A product can be unreasonably dangerous due to a defect in its manufacture, design, or failure to provide adequate

warnings or instructions, also known as a marketing defect. *Id.* at 480. "A marketing defect is proven when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warning or instructions renders an otherwise adequate product unreasonably dangerous." *Id.*

"The elements of a marketing defect cause of action are: (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed; (3) the product has a marketing defect; (4) the lack of instructions or warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn or instruct causes the user's injury." *Id.* (citing *Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 578 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

"The central question in both marketing-defect cases and negligent failure to warn cases is . . . under what circumstances is a manufacturer required to provide a warning." *Hanis v. Tex. Util. Co.*, 71 S.W.3d 874, 879 (Tex. App.—Fort Worth 2002, no pet.). The existence of a legal duty to warn of dangers or instruct on proper use is a question of law for the courts. *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993). The determination of whether a duty exists is made at the time the product leaves the manufacturer. *Saenz*, 873 S.W.2d at 356.

The component part doctrine distinguishes between duties owed by the manufacturer of the final product and duties owed by a manufacturer who only supplies parts used in the final product. *Bostrum Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681 (Tex. 2004). "[I]f the

9 / 12

component-part manufacturer does not participate in the integration of the component into the finished product, it is not liable for defects in the final product if the component itself is not defective." *Id.* at 683 (citing Restatement (Third) of Torts: Product Liability § 5 (1998)). "For a duty to warn to be imposed on a component-part manufacturer or seller, it must have 'actively participated in the integration process.'" *Davis*, 254 S.W.3d at 480 (citing *Toshiba Int'l Corp. v. Henry*, 152 S.W.3d 774, 783 (Tex. App.—Texarkana 2004, no pet.)). A component manufacturer "has no duty to warn of dangers unless (1) the component itself is defective or (2) it actively participated in the integration of the component into the final system." *Id.* at 482. Without active participation, a component manufacturer "has no duty independent of the completed product assembler to analyze the completed product which incorporates the nondefective part." *Henry*, 152 S.W.3d at 778. "[P]roviding mechanical or technical services or advice concerning a component part does not, by itself, constitute substantial participation that would subject the component supplier to liability." *Id.* at 784 (quoting Restatement (Third) of Torts § 5 cmt. a, illus. 5(e).).

Under the component parts doctrine, then, Fuji Limited, as the engine manufacturer, and Subaru-Robin, as the engine distributor, can be liable only if the engine itself was defective or it actively participated in the integration of the engine into the generator. Fuji Limited's motor was a small, multipurpose internal combustion engine that could have been used for any number of outdoor applications for which the risk of carbon monoxide build-up would have been minimal or nonexistent. In the case of the Black Max 6560 generator, Subaru-Robin "did not test the [Fuji Limited] engine or provide other mechanical or technical assistance" to Powermate. (Doc. 128-9 ¶ 4, Aff. of Brad Murphy; *See also*, Doc. 128-11 ¶ 3, Aff. of Tom Graber.) Because there is no evidence going towards either prong of the component parts doctrine, the Defendants

motion for summary judgment must be granted.

Assuming, *arguendo*, that the component parts doctrine does not apply to the Defendants, the Court finds Defendants nevertheless had no duty to warn because the dangers were open and obvious. *Caterpillar*, 911 S.W.2d at 382 (holding that "there is no duty to warn when the risks associated with a particular product are matters 'within the ordinary knowledge common to the community.'") (citing *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991)). "[T]he law of products liability does not require a manufacturer or distributor to warn of obvious risks." *Id.* The Court finds that the multiple dangers of operating an internal combustion engine in an enclosed space where people are living are obvious.

Plaintiffs brought forward no evidence showing that Defendant Fuji USA had any involvement in this case.

IV. Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant Home Depot's Motion for Summary Judgment Against Subaru-Robin and Fuji USA (Doc. 127) is **DENIED.**

The Court further **ORDERS** that Home Depot's cross claims against Subaru-Robin and Fuji USA (Docs. 63 and 64) are **DISMISSED**.

The Court further **ORDERS** that the Parties' Joint Stipulation of Dismissal of All Claims against Home Depot is **GRANTED**. (Doc. 41.) Home Depot is **DISMISSED** from this action.

The Court further **ORDERS** that Defendants Fuji Limited, Fuji USA, and Subaru-Robin's Motion for Summary Judgment Against Plaintiffs and Intervenor (Doc. 128) is **GRANTED** and these Defendants are **DISMISSED**.

Defendants Fuji Limited, Fuji USA, and Subaru-Robin's Motion in Limine (Doc. 174) is **MOOT**.

The Court believes the case has now been fully adjudicated, but, in an abundance of caution, and before entering final judgment, **ORDERS** any party believing it has an open claim to inform the Court within ten (10) days.

SIGNED at Houston, Texas, this 8th day of March, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE